IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CATHERINE PAPAGOLOS                                                          PLAINTIFF

v.                                              CIVIL ACTION NO. 3:11-CV-00158-GHD-SAA

LAFAYETTE COUNTY SCHOOL DISTRICT;
MICHAEL McPHAIL, Board Member in His
Official and Individual Capacities; and
JEFF NELSON, Athletic Director, in His
Official and Individual Capacities                                          DEFENDANTS

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART ALL
DEFENDANTS' MOTION TO DISMISS AND
DENYING AS MOOT
DEFENDANTS' MCPHAIL AND NELSON'S MOTION FOR QUALIFIED IMMUNITY**

Presently before the Court is a motion to dismiss [9] pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure filed by Defendants Lafayette County School District, Michael

McPhail, and Jeff Nelson, as well as a motion for qualified immunity [13] filed by Defendants

Michael McPhail and Jeff Nelson. Upon due consideration and for the reasons stated below, the

Court finds that the motion to dismiss [9] filed by Defendants Lafayette County School District,

Michael McPhail, and Jeff Nelson should be granted in part and denied in part, and that the motion

for qualified immunity [13] filed by Defendants Michael McPhail and Jeff Nelson should be

denied as moot.[1]

*A. Factual and Procedural Background*

On December 13, 2011, Plaintiff Catherine Papagolos ("Plaintiff"), former head coach for

the Lafayette County School District's girls' softball team and advanced fitness teacher, filed this

action against Defendants Lafayette County School District ("LCSD"); Michael McPhail, a

_____

[1] The Court further finds that Plaintiff's requests for hearing or oral argument on these motions are not well
taken, as the Court finds that a hearing or oral argument is not necessary to a ruling on the present motions.

1

member of the LCSD school board ("Defendant McPhail"), in his individual and official capacities; and Jeff Nelson, athletic director of LCSD ("Defendant Nelson"), in his individual and official capacities. Plaintiff asserts causes of action for discrimination under Title IX; retaliation under Title IX; gender discrimination under Title VII; Equal Pay Act violations; age discrimination under the Age Discrimination in Employment Act (the "ADEA"); First Amendment free speech retaliation under 42 U.S.C. § 1983; First Amendment free speech violation under 42 U.S.C. § 1983; Fourteenth Amendment procedural and substantive due process violations under 42 U.S.C. § 1983; conspiracy under 42 U.S.C. § 1985; malicious interference with employment under state law; and wrongful termination under state law.

In lieu of answering the complaint, Defendants LCSD, McPhail, and Nelson have filed a motion to dismiss [9] under Rule 12(b)(6) challenging the viability of all claims asserted against LCSD except the Title IX claims and the Title VII claims, as well as the viability of all claims asserted against Defendants McPhail and Nelson in their individual and official capacities.

Additionally, Defendants McPhail and Nelson have filed a motion for qualified immunity [13] on the First Amendment free speech violation, First Amendment free speech retaliation, and Fourteenth Amendment due process violation claims under Section 1983, as well as the Section 1985 conspiracy claims of First Amendment free speech violation and equal protection violation. Because the Court finds that the Section 1983 and Section 1985 claims must be dismissed for failure to state a claim under Rule 12(b)(6), the Court need not address the separate arguments for dismissal on qualified immunity grounds.

### B. Rule 12(b)(6) Standard

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing

*Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, No. 12–30617, 2013 WL 1490654, at *2 (5th Cir. Apr. 12, 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. In a Rule 12(b)(6) determination, the court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund*, 594 F.3d at 387 (citing *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937).

*C.  Analysis and Discussion*

**1.  Title IX Claims Against Defendants McPhail and Nelson**

Defendants first challenge the viability of the Title IX claims asserted against Defendants McPhail and Nelson.  Plaintiff concedes that she is not asserting her Title IX claims against Defendants McPhail and Nelson.  *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Dismiss [16] at 8.  The Court thus finds that the Title IX claims against Defendants McPhail and Nelson shall be dismissed.  In their Rule 12(b)(6) motion, Defendants do not challenge the Title IX claims brought against the LCSD.  Thus, the Title IX claims against Defendants McPhail and Nelson shall be dismissed, but the Title IX claims against LCSD shall remain viable.

**2.  Title VII Claims Against Defendants McPhail and Nelson**

Defendants next challenge the viability of the Title VII claims asserted against Defendants McPhail and Nelson.  Plaintiff alleges under Title VII unlawful discharge based on gender discrimination and retaliation suffered for reporting discriminatory activity.  Defendants contend that Title VII claims can only be made against an employer, and that because fellow employees are not subject to suit on Title VII, such claims must be dismissed against Defendants McPhail and Nelson.  Plaintiff recognizes that this is a correct statement of the law as it pertains to gender and retaliation claims brought under Title VII, but argues that controlling Fifth Circuit precedent is erroneous.  *See id.*  The Court is bound by Fifth Circuit precedent and thus finds that Defendants' argument that the Title VII claims for gender discrimination and retaliation against Defendants McPhail and Nelson is well taken and such claims shall be dismissed.  *See, e.g., Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994) ("The definition of the term 'employer' in [42 U.S.C.] § 2000e(b) does not include individuals who do not otherwise qualify as employers under the statute.").  Defendants do not challenge the Title VII claims brought against the LCSD.  Thus,

although the Title VII claims for gender discrimination and retaliation against Defendants McPhail and Nelson shall be dismissed, the Title VII claims for gender discrimination and retaliation against LCSD shall remain viable.

### 3. Equal Pay Act Violation Claim Against Defendants McPhail and Nelson

Defendants next challenge the viability of the Equal Pay Act violation claim asserted against Defendants McPhail and Nelson. Defendants contend that such claim must be dismissed against Defendants McPhail and Nelson, as Defendants McPhail and Nelson are not employers for purposes of the Equal Pay Act, which imposes liability only on employers for gender-based salary discrepancies. For the reasons stated below, the Court finds this argument is well taken.

The United States Supreme Court has stated

> Title VII and the Equal Pay Act primarily govern relations between employees and their employer, not between employees and third parties. We do not suggest, of course, that an employer can avoid his responsibilities by delegating discriminatory programs to corporate shells. . . . [T]he Equal Pay Act applies to "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

*City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 718 n.33, 98 S. Ct. 1370, 55 L. Ed. 2d 657 (1978). To determine whether an employer/employee relationship exists, the Fifth Circuit utilizes the "economic reality" test. *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012); *see Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990); *see also Goldberg v. Whitaker House Co-op.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961).

In the economic reality test, the Court must consider whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4)

maintained employment records." *Gray*, 673 F.3d at 355 (quoting *Williams*, 595 F.3d at 620). "Under that test, the right to control the details and means by which the work is to be performed is the most important factor." *Craft-Palmer v. State Farm Ins. Co.*, 157 F.3d 903, 1998 WL 612388, at \*1 (5th Cir. 1998) (per curiam) (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990) (internal quotation marks omitted)). In cases where there may be more than one employer, such as the case *sub judice*, the Court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id.* (citing *Watson*, 909 F.2d at 1556). Thus, here, the Court will apply the economic realities test to both Defendants McPhail and Nelson, as Plaintiff maintains that both of them were her employer for purposes of the Equal Pay Act.

## 1. Power to Hire and Fire Employees

With respect to the first factor, as Defendants argue, it is well established that school boards in Mississippi are vested with final authority for ultimate employment decisions, such as dismissal and non-renewal. *See Yarbrough v. Camphor*, 645 So. 2d 867, 870 (Miss. 1994); *Tutwiler v. Jones*, 394 So. 2d 1346, 1348 (Miss. 1981). Thus, Plaintiff cannot establish that either Defendant McPhail or Defendant Nelson, acting alone, hired or fired her.

## 2. Supervision or Control of Employee Work Schedules or Conditions of Employment

With respect to the second factor, the Court looks to see whether Plaintiff has alleged that Defendant McPhail and/or Defendant Nelson supervised or controlled her work schedules or conditions of employment.

### Defendant McPhail

Plaintiff alleges that Defendant McPhail, as a board member, had some control over LCSD athletic teams' financial issues and had "co-signed for a bank note so the baseball team could get a

6

state-of-the-art pitching machine"; Plaintiff further alleges that Defendant McPhail "had told [Jimmy Lee Murphey, LCSD's assistant athletic director,] he was not going to pay for the work [Murphey had] done on the softball dugout." Pl.'s Compl. [1] ¶ 38. Plaintiff avers that Defendants McPhail and Nelson came to her office before school started and asked her not to go to the school board and speak about her concerns of inequality and stated that "they would take care of the lack of coaches and inequalities among the softball and baseball teams." *Id.* ¶ 47. Plaintiff argues in her response to Defendants' motion that she has alleged that Defendant McPhail "intimidated [Plaintiff] into removing her name from a board agenda, thus preventing her from informing the board of the discrepancies in pay"; told Plaintiff after that meeting that she "may have won some battles, but he would win the war"; and (3) "further instructed male coaches not to disclose their actual stipends and threatened employees with termination if they assisted in any investigation questioning LCSD's coaching stipends." Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Dismiss [16] at 10. None of her allegations or argument support that Defendant McPhail supervised or controlled her work schedules or conditions of employment. Thus, Plaintiff has failed to satisfy the second factor with respect to Defendant McPhail.

Defendant Nelson

The Court now turns to whether Plaintiff has alleged that Defendant Nelson supervised or controlled her work schedules or conditions of employment. It is clear to the Court from the face of Plaintiff's complaint that Defendant Nelson, as athletic director, supervised at least certain key aspects of Plaintiff's work. She alleges that Defendant Nelson "named" the individuals who served as Plaintiff's assistant coach during her time at LCSD, *see* Pl.'s Compl. [1] ¶ 26; "moved the girls' softball team training period" in a preliminary draft for the 2011–2012 school year, *id.* ¶ 61; "promised [to] address" Plaintiff's concerns about the alleged inequalities she faced as the

girls' head softball coach with the LCSD school board, *see id.* ¶¶ 46–47, 64; and "reassigned Plaintiff from her middle school advance fitness teaching post to study halls at the middle school" and "released Plaintiff from all her coaching obligations"—in effect "demot[ing]" her, *see id.* ¶¶ 72, 77. It is apparent from Plaintiff's complaint that she felt that Defendant Nelson was her supervisor, as Defendant Nelson was the one she voiced her numerous concerns to about her assistant coaches, *see id.* ¶ 27–28, as well as her concerns about the alleged inequalities the girls' softball team faced in comparison with the boys' baseball team, *see id.* ¶¶ 46, 60. It is also apparent, however, from the face of Plaintiff's complaint, that Defendant Nelson was subordinate to the LCSD school board, *see id.* ¶¶ 52, 64, 70, 78, 80, and at least at times acted more as a mediator than supervisor between the various LCSD athletic teams, *see id.* ¶ 60. Plaintiff argues in her response to Defendants' motion that Defendant Nelson also "cooked the books in dealing with coaching stipends to hide the fact that men got paid more than women"; "after Plaintiff confronted [Defendant Nelson] on the salary inequities, Defendant Nelson immediately went to the board and recommended [Plaintiff] be removed from her position as softball coach"; and that "[t]he Board followed his lead and rubber[-]stamped his decision." Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Dismiss [16] at 10. Overall, the Court finds that Plaintiff has alleged that Defendant Nelson supervised or controlled her work schedules or conditions of employment and thus has satisfied the second factor with respect to Defendant Nelson.

### 3. Determination of the Rate or Method of Payment

With respect to the third factor, school boards in Mississippi are vested with the authority to assign the salaries of licensed employees. *See* MISS. CODE ANN. § 37-9-37. Thus, Plaintiff cannot establish that either Defendant McPhail or Defendant Nelson, acting alone, determined the rate and method of her pay.

4. Maintenance of Employee Records

Plaintiff does not allege that either Defendant McPhail or Defendant Nelson maintained employment records. Thus, Plaintiff has not satisfied the fourth factor.

In sum, applying the economic reality test to Defendant McPhail and then to Defendant Nelson, the Court finds that Plaintiff has failed to allege that either Defendant McPhail or Defendant Nelson were her employer for purposes of the Equal Pay Act. She has alleged that Defendant Nelson supervised, at least somewhat controlled her work schedule, and controlled some conditions of her employment. However, meeting this factor alone is insufficient to establish that Defendant Nelson was her employer for purposes of the Equal Pay Act. Plaintiff has not alleged that Defendant McPhail and/or Defendant Nelson were sufficiently involved in the operation of her employment to be her employer for purposes of the Equal Pay Act, and thus, this claim is dismissed. Defendants do not challenge Equal Pay Act violation brought against the LCSD. Thus, although the Equal Pay Act claim against Defendants McPhail and Nelson shall be dismissed, the Equal Pay Act claim against LCSD shall remain viable.

**4. ADEA Age Discrimination Claim Against Defendants McPhail and Nelson**

Defendants next contend that Plaintiff's ADEA age discrimination claim against Defendants McPhail and Nelson fails because the ADEA is limited to employers and an employer's agent in his official capacity. 29 U.S.C. § 638. Plaintiff recognizes that this is a correct statement of the law, but argues that controlling Fifth Circuit precedent is erroneous. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Dismiss [16] at 11. The Court is bound by Fifth Circuit precedent and thus finds that Defendants' argument that the ADEA age discrimination claim against Defendants McPhail and Nelson is well taken and such claim shall be dismissed.

### 5. ADEA Age Discrimination Claim Against LCSD

Defendants next contend that Plaintiff's ADEA age discrimination claim against LCSD fails. Plaintiff alleges that LCSD unlawfully terminated her because of her age in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.* Defendants contend that Plaintiff has failed to allege facts that plausibly suggest that she was actually discharged due to her age and thus that her ADEA claim fails and must be dismissed. The Court finds Defendants' argument is not well taken.

The ADEA provides that "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie ADEA case, the plaintiff must show "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quotation marks and citation omitted). Ultimately, "a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010); *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) (ADEA claim requires but-for causation); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2523, 186 L. Ed. 2d 503 (June 24, 2013) ("the ADEA requires proof that the prohibited criterion was the but-for cause of the prohibited conduct") (citing generally *Gross*).

At the Rule 12(b)(6) stage, however, the plaintiff need not plead a prima facie ADEA case to state a plausible claim of age discrimination under the ADEA. *Flores v. Select Energy Servs., L.L.C.*, 486 F. App'x 429, 432 (5th Cir. 2012) (per curiam); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The prima facie case under *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] is an evidentiary standard, not a pleading requirement."). However, "[t]he elements of a prima facie case are helpful . . . in framing what constitutes an ADEA claim." *Flores*, 486 F. App'x at 432.

Looking to the face of Plaintiff's complaint, the Court finds that the Plaintiff alleges that (1) she was discharged, Pl.'s Compl. [1] ¶¶ 26, 141, 145–47, 149; (2) she was qualified for the position of head softball coach, *id.* ¶ 26; (3) she is a member of a protected class of individuals over forty years of age, *id.* ¶ 129; and (4) she was replaced by a younger employee "with little or no experience coaching a team," *id.* ¶¶ 82, 137. Plaintiff has also alleged that Defendants' stated reasons for allegedly terminating Plaintiff from the head softball coach position were mere pretext. *See id.* ¶ 141. The Court finds that Plaintiff's factual allegations are sufficiently plausible to support an ADEA claim of age discrimination at the early Rule 12(b)(6) stage of this case. Thus, the Court shall sustain Plaintiff's ADEA age discrimination claim against LCSD.

**6. Section 1983 Claims Against All Defendants**

Defendants next challenge the viability of Plaintiff's Section 1983 claims. Plaintiff alleges pursuant to Section 1983 that Defendants violated her right to First Amendment right to free speech, retaliated against her for exercising her right to free speech in violation of the First Amendment, and deprived her of her constitutionally protected property interest in her head softball coach position without due process of law in violation of the Fourteenth Amendment.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under [Section] 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (citing cases). The Fifth Circuit has recognized that to sustain a Section 1983 claim, a plaintiff is required to assert "claims of specific conduct and actions giving rise to a Constitutional violation." *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996) (emphasis added). As shown below, the Court finds that Plaintiff has failed to allege the violation of either a First Amendment or Fourteenth Amendment constitutional right; thus, the Court need not reach whether Plaintiff has shown that the alleged acts were committed by a person acting under color of state law.

### a. First Amendment Claims under Section 1983 Against All Defendants

Plaintiff claims that under Section 1983 Defendants violated her First Amendment right to free speech and removed her as head girls' softball coach in retaliation for engaging in speech protected by the First Amendment. To establish a Section 1983 free speech retaliation claim, Plaintiff must ultimately prove that "(1) [s]he suffered an adverse employment action; (2) [s]he spoke as a citizen, and not as a public employee, on a matter of public concern; (3) [her] interest in the speech outweighed the employer's interest in promoting efficiency; and (4) the speech precipitated the adverse employment action." *Briscoe v. Jefferson County*, 500 F. App'x 274, 277 (5th Cir. 2012) (per curiam) (citing *Garcetti*, 547 U.S. at 417, 126 S. Ct. 1951). Plaintiff has

alleged that she suffered an adverse employment action by being terminated from her position as head girls' softball coach. *See* Pl.'s Compl. [1] ¶¶ 26, 141, 145–47, 149. However, because Plaintiff does not allege facts supporting that she was speaking as a citizen on a matter of public concern, Plaintiff fails to state either a First Amendment free speech claim or a free speech retaliation claim under Section 1983.

It is well established that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (citations omitted). The idea that "teachers may constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work" is a "premise that has been unequivocally rejected in numerous . . . decisions of the [Supreme] Court." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. E. 2d 811 (1968). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419, 126 S. Ct. 1951 (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)).

First, the plaintiff must show he or she was speaking as a citizen not as part of his or her public job. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (citing *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006)). The Court's focus is not on the content of Plaintiff's alleged speech, but rather "the role the speaker occupied when [s]he said it." *See id.* "An employee is not speaking as a citizen—but rather in his role as an employee—when he 'makes statements pursuant to his official duties.' " *Haverda v. Hays County, Tex.*, 723 F.3d 586 (5th Cir. July 17, 2013) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (in turn

quoting *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951)). "Activities required by one's position or undertaken in the course of performing one's jobs are activities pursuant to official duties." *Id.* (citing *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007)). Thus, "[e]ven if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Williams*, 480 F.3d at 692 (citing *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951).

"Formal job descriptions, although relevant, are not dispositive, as they 'often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.' " *Elizondo v. Parks*, 431 F. App'x 299, 303 (5th Cir. 2011) (per curiam) (quoting *Garcetti*, 547 U.S. at 424–25, 126 S. Ct. 1951). Instead, "the inquiry is a 'practical one,' and the controlling factor is whether the plaintiff's expressions were made pursuant to one of the numerous duties for which the plaintiff was employed." *Id.* (quoting *Garcetti*, 547 U.S. at 421, 424, 126 S. Ct. 1951). "Activities undertaken in the course of performing one's job are activities pursuant to official duties." *Williams*, 480 F.3d at 693.

In the case *sub judice*, the alleged speech in question consisted of statements made by Plaintiff concerning perceived gender inequality at LCSD. Plaintiff reiterates in her response that the speech in question articulated concerns "that female athletes were getting short[-]changed in terms of practice and equipment" and that "female coaches were not being paid the same as their male counterparts." Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Dismiss [16] at 13 (citing Pl.'s Compl. [1] ¶¶ 18–34, 40–44, 57–63). Plaintiff maintains that Defendants learned that she had made the statements and that she was planning, as a private citizen, to address the school board in a

school board meeting. *Id.* at 13–14 (citing Pl.'s Compl. [1] ¶¶ 46–49). Plaintiff further maintains that in a closed door meeting Defendants McPhail and Nelson "told [her] not to address the school board and promised to fix the inequalities" and that "just two months after Defendants McPhail and Nelson told [Plaintiff] she could not address the board, [Plaintiff] was stripped of her coaching duties and her teaching duties (she was reassigned to study hall)." *Id.* at 14 (citing Pl.'s Compl. [1] ¶¶ 66–75, 79). Plaintiff contends that this speech was a matter of public concern, because "LCSD was committing brazen acts of discrimination against female athletes and was 'cooking the books' to hide the fact that it was paying male coaches substantially more than female coaches" and "the taxpaying citizens of Lafayette County have a right to know how their money is being spent and whether their board members are using their position of power as a tool of discrimination." *Id.* at 16 (citing Pl.'s Compl. [1] ¶¶ 18–34, 40–44, 57–63).

First Amendment case law instructs us as follows. In *Pickering*, the United States Supreme Court held that a teacher's First Amendment rights were violated when the school board dismissed him for sending a letter to a newspaper in connection with the school board's recently proposed tax increase that "constituted, basically, an attack on the [s]chool [b]oard's handling of 1961 bond issue proposals and its subsequent allocation of financial resources between the schools' educational and athletic programs. It also charged the superintendent of schools with attempting to prevent teachers in the district from opposing or criticizing the bond issue." 391 U.S. at 564–66, 88 S. Ct. 1731. The Fifth Circuit has summed up the Supreme Court's holding in *Pickering* as follows: "Letters to the editor, supporting a candidate during a campaign, are a unique form of speech that embody the very essence of the First Amendment and require its full protection." *Haverda*, 723 F.3d 586 (citing *Pickering*, 391 U.S. 563, 88 S. Ct. 1731, and other cases). Thus, a teacher who writes a letter to a local newspaper addressing the funding policies of the school board

can be acting as a citizen. *See Williams*, 480 F.3d at 693 (citing *Pickering*, 391 U.S. at 563, 88 S. Ct. 1731).

Similarly, a teacher who complains to her principal about the school's discriminatory hiring practices can be acting as a citizen. *See id.* (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)). In *Givhan*, a case brought at the height of school desegregation orders, a junior high English teacher was dismissed from her employment at the end of the school year for refusing to administer standardized tests to her students and other alleged acts of non-cooperation with the school, including "private encounters between [the plaintiff] and the school principal in which [the plaintiff] allegedly made 'petty and unreasonable demands' in a manner variously described by the principal as 'insulting,' 'hostile,' 'loud,' and 'arrogant.' " *See Givhan*, 439 U.S. at 411, 411 n.1, 99 S. Ct. 693. The United States Supreme Court held that the fact that the plaintiff's complaints and opinions concerning the school's allegedly racially discriminatory practices were made privately to her principal did not remove her comments from the purview of First Amendment protection, and the Supreme Court remanded the case for the factual determination of whether the plaintiff would have been terminated regardless of her "demands." *Id.* at 412–17, 99 S. Ct. 693. It is important to note that neither the private expression of the comments nor the contended nature of the comments—variously described by the school principal as "insulting," "hostile," "loud," and "arrogant"—were sufficient to remove the comments from First Amendment protection. *See id.* at 412, 99 S. Ct. 693. Thus, a teacher who expresses vehement criticisms to her principal that certain school policies and procedures are racially impermissible can be acting as a citizen.

However, a school athletic director and head football coach who submits memoranda to his principal outlining his concerns with the school district's handling of school athletic funds can be

acting in his official capacity as a public employee, not as a citizen, if the memoranda focus on his daily operations as a coach, indicate the school's actions were "hurt[ing his] ability to provide . . . student/athletes with critical items and/or materials necessary for competition," and indicate that he needed to consult with his principal in order to be able to purchase equipment and enter competitions. *Williams*, 480 F.3d at 690–91, 694. The Fifth Circuit reasoned in *Williams* that "[s]imply because [the plaintiff] wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job." *Id.* at 694. And despite the plaintiff's arguments to the contrary, the Fifth Circuit held that "[t]he memoranda were not written from [the plaintiff's] perspective as a father and taxpayer." *Id.* The Fifth Circuit distinguished *Williams* from *Pickering*, in which the Supreme Court had held that a teacher's reporting of amounts the school district had expended on athletics "were matters of public record [and an issue of public concern] on which his position as a teacher in the district did not qualify him to speak with any greater authority than any other taxpayer," and thus that he was acting as a citizen. *See Pickering*, 391 U.S. at 572, 88 S. Ct. 1731. The Fifth Circuit explained that the *Williams* plaintiff, unlike the *Pickering* plaintiff, "had special knowledge" of the school's budget as athletic director and head football coach and "was also experienced with standard operating procedures for athletic departments" and even his accusatory remarks in the memoranda were "part-and-parcel of his concerns about the program he ran." *Williams*, 480 F.3d at 694. Thus, unlike the *Pickering* plaintiff, the *Williams* plaintiff was acting in the course of performing his job as athletic director and his speech was consequently not protected by the First Amendment. *Id.*; *see also Elizondo*, 431 F. App'x at 304 (state university employee who made statements to his supervisor about company's budget shortfall and how his job reassignment would impact his workload, salary, and reporting duties was acting in course of his official duties); *Davis v. McKinney*, 518 F.3d 304, 315

(5th Cir. 2008) (audit manager who wrote letter to university president and her immediate supervisor discussing concerns about the university's inadequate response to her internal computer pornography investigation was acting in course of her official duties); *Nixon v. City of Houston*, 511 F.3d 494, 498–99 (5th Cir. 2007) (police officer who made comments at crime scene to media was acting in course of his official duties).

In *Charles v. Grief*, the Fifth Circuit held that an employee of a state lottery commission who sent an e-mail to high-ranking commission officials raising concerns about racial discrimination and retaliation against him and other minority employees of the commission was acting as a citizen, but the Fifth Circuit explained that "most significantly" in that case, "[the plaintiff's] speech—unlike that of the plaintiffs in *Garcetti* and *Williams*—was not made in the course of performing or fulfilling his job responsibilities, was not even indirectly related to his job, and was not made to higher-ups in his organization . . . but was communicated directly to elected representatives of the people." *Charles*, 522 F.3d 508, 509–10, 514 (5th Cir. 2008).

Similarly, in *Davis v. McKinney*, although the Fifth Circuit held that the audit manager was acting in the course of her official duties when she wrote to the university president and her immediate supervisor articulating her concerns about the university's inadequate response to her internal pornography investigation, the Fifth Circuit also held that the audit manager was not acting in the course of her official duties, and was thus a citizen, when she wrote the portion of her letter concerning the number of vice presidents and related issues, as "the topic does not relate to computer use or the internal audit department specifically" and "[t]here was no financial component to [the plaintiff's] position." *Davis*, 518 F.3d at 315.

Keeping all of this in mind, the Court turns to Plaintiff's complaint in the case *sub judice*. Taking Plaintiff's allegations as true, which the Court must do at the Rule 12(b)(6) stage, Plaintiff

made comments about the alleged inequities her female student athletes and she, as the head softball coach, faced. Her comments were made concerning the salary and stipend she was paid as a coach compared with that of her male counterparts, the fact that her assistant coaches were not paid and were not full-time staff unlike the other LCSD athletic teams, the amount of funding her team received for equipment versus that of other LCSD athletic teams, as well as other various issues the team faced, such as equal access to school facilities. *See* Pl.'s Compl. [1] ¶¶ 37–46, 66. Like the *Williams* plaintiff, this Plaintiff's comments focused on the daily operations of her team, including budgetary concerns that would impact Plaintiff's ability as a coach. Like the *Williams* plaintiff, this Plaintiff had special knowledge of the school's budget as a head coach and her experience as a coach indicated she was experienced with standard operating procedures for athletic departments in general. Also, like the *Williams* plaintiff, this Plaintiff's remarks were part-and-parcel of her concerns about the program she ran and the terms of her own position. For all of these reasons, the Court finds that Plaintiff, in making her comments and planning to make the comments at the school board meeting, was acting in the course of performing her job as head softball coach, and her speech was consequently not protected by the First Amendment. Thus, Plaintiff's allegations of a First Amendment free speech claim and her free speech retaliation claim, both brought under the auspices of Section 1983, shall be dismissed for failure to state a claim. The Court now turns to examine Plaintiff's Fourteenth Amendment due process violation claim brought under Section 1983.

### b. Fourteenth Amendment Substantive and Procedural Due Process Claims under Section 1983 Against All Defendants

Plaintiff maintains that she had a constitutionally protected liberty and/or property interest in her continued employment as LCSD's head softball coach which was deprived by Defendants. Plaintiff maintains that her complaint alleges two theories supporting a Fourteenth Amendment

19

due process violation: that her rights were violated when Defendants barred Defendant McPhail from testifying at her non-renewal hearing, and that her rights were violated when she was stripped of her softball duties and reassigned to study hall while her 2010–2011 contract was still in full force. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n [16] at 22. Defendants maintain that Plaintiff's allegations fail to state a claim on either ground. For the reasons stated below, the Court finds that Plaintiff's allegations fail to establish that she had any cognizable liberty or property interest in her continued employment as LCSD's head softball coach, and thus that her allegations fail to state a claim under Section 1983 that her Fourteenth Amendment due process rights were violated.

To state a Fourteenth Amendment due process claim under Section 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). "The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest." *McCasland v. City of Castroville*, 514 F. App'x 446, 448 (5th Cir. 2013) (per curiam) (quoting *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009)). Therefore, unless Plaintiff has an entitlement that is sufficiently definite to be considered a liberty or property interest, the Due Process clause does not come into play. *See id.*

According to Plaintiff, she had an expectation of continued employment as LCSD's head softball coach and an advanced fitness teacher, because she was removed from her head softball coach and teaching position during the school year and was non-renewed for the following school year, in effect dismissed from her position and reassigned to study hall. Plaintiff contends that Mississippi law provides its certified teachers due process protections in such situations and creates a protectable property or liberty interest in employment. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Dismiss [16] at 24–25. For the reasons stated below, the Court finds that

20

Plaintiff did not have a property or liberty interest in her employment beyond the 2010–2011 school year.

Plaintiff alleges that she was first employed by LCSD to be a physical education teacher, as well as the head coach to LCSD's girls' softball team for 2007–2008 school year. Pl.'s Compl. [1] ¶¶ 16–17. Plaintiff alleges that her liberty and/or property interest in her continued employment was deprived by Defendants when they "stripp[ed] her of her coaching duties" prior to the season's end and "reassigned Plaintiff from her middle school advance fitness teaching post to study halls at the middle school." *See* Pl.'s Compl. [1] ¶¶ 69, 72, 73, 75. Plaintiff further alleges that "[o]n or about May 2, 2011, Plaintiff received a letter . . . informing her Defendant Nelson had removed her from her position of softball coach permanently." *Id.* ¶ 83. Plaintiff attaches the letter to her complaint which provides that Plaintiff was removed from her coaching position for the 2011–2012 school year due to "[u]nsatisfactory w[i]n/loss record with no playoff wins in a three[-]year period"; "[u]nsatisfactory ability to work with assistant coaches," as "three assistant coaches left softball program in a three[-]year period"; and "[u]nsatisfactory ability to work with other coaches and sports programs, such as soccer and volleyball, in athletic department by not being considerate of the sport in season." May 2, 2011 LCSD Letter to Pl. [1-7] at 1. On June 28, 2011, the LCSD sent Plaintiff a letter, which is attached to her complaint, stating that following Plaintiff's non-renewal hearing, the school board had decided not to renew Plaintiff's employment contract, but that she was recommended for renewal with a contract for the 2011–2012 school year and yearly salary of $41,305.00. *See* June 28, 2011 LCSD Letter to Pl. [1-10] at 1. For all the reasons stated below, Plaintiff has failed to allege that she had a constitutionally protected liberty or property interest in her continued employment as LCSD's head softball coach.

Property Interest

First, Plaintiff has failed to allege a viable property interest. Property interests are not created by the Constitution. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Rather, whether Plaintiff possessed such a property interest is "determined by reference to state law," *see Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 252 (5th Cir. 1984), and must "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings," *see Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995).

Plaintiff's contract for the 2010–2011 school year which Plaintiff attaches to her complaint, *see* Contract of Employment [1-1], did not create a protected property interest in continued employment. The contract indicates Plaintiff was employed as a "classroom teacher" from August 2, 2010 until May 20, 2011. *See id.* at 1. Any expectation of employment Plaintiff had beyond the one-year term of her contract did not arise from the terms of the contract itself. *See Markwell v. Culwell*, 515 F.2d 1258, 1259 (5th Cir. 1975) (per curiam) (holding that teacher's property interest in his employment was "limited by the year-to-year contract and his probationary status"). At best, therefore, Plaintiff's expectation that she would continue to serve in her same position beyond the term of her contract was a unilateral expectation in continued employment that was not reflected in the agreement between Plaintiff and LCSD. A unilateral expectation of continued employment does not create a constitutionally protected property interest. *Evans v. City of Dallas*, 861 F.2d 846, 850 (5th Cir. 1988); *see also Roth*, 408 U.S. at 577, 92 S. Ct. 2701 ("To have a property interest in a benefit, a person clearly must have . . . more than a unilateral expectation of it.").

Second, the contract provides that Plaintiff was employed as a "classroom teacher" and that "the employee agrees to reassignment during the school term to any area for which a valid license is held." Contract of Employment [1-1] at 1. Thus, any belief Plaintiff had that she should have continued to serve as head softball coach and advanced fitness teacher for the remainder of the 2010–2011 school year, as opposed to being reassigned to a study hall teaching position or any other, was also not supported by the contract and was a unilateral expectation that did not create a constitutionally protected property interest. The contract also provides that it "shall be subject to all applicable policies, resolutions, rules[,] and regulations of the employer and the State of Mississippi . . . ." *Id.* The applicable Mississippi statutes governing teacher's employment contracts similarly do not furnish Plaintiff with a constitutionally protected property interest in employment beyond the one-year term of her contract.

The pertinent Mississippi statutes provide that school administrators do not need to demonstrate good cause in justifying a decision not to renew a teacher's contract. MISS. CODE ANN. § 37–9–101 *et seq*; *see Miss. Emp't Sec. Comm'n v. Philadelphia Munic. Separate Sch. Dist.*, 437 So. 2d 388, 396–97 (Miss. 1983). Such decisions constitute a subjective determination made by the superintendent and are ultimately approved by the school board. *See Miss. Emp't Sec. Comm'n*, 437 So. 2d at 392–94. As described above, the relevant contract in this instance provides merely for employment for the 2010–2011 school year and not thereafter. Further, "[i]t is the intent of the [Mississippi] Legislature not to establish a system of tenure." MISS. CODE ANN. § 37-9-101. Therefore, no Mississippi statute supplies a basis for a claim of entitlement to the head softball coach and advanced fitness teaching position. It is clear to this Court that Plaintiff has failed to allege a constitutionally protected property interest to sustain her Fourteenth Amendment claims under Section 1983.

23

<u>Liberty Interest</u>

Plaintiff has similarly failed to allege a viable liberty interest. "Mere non-renewal of an employment relationship does not constitute a deprivation of liberty." *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (citing *Roth*, 408 U.S. at 575, 92 S. Ct. 2701; *Dennis v. S & S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978)). To show deprivation of a liberty interest, Plaintiff must show "(1) that she has been stigmatized, (2) in or as a result of the 'discharge' process, and (3) that the stigmatization resulted from charges made public by her employer." *Id.* (citing *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983)). Upon this showing, the plaintiff is entitled to a hearing—not to recapture her previous employment—but to clear her name. *See id.* (citing *Wells*, 711 F.3d at 676 (in turn citing *Roth*, 408 U.S. at 573–75, 92 S. Ct. at 2701); *Dennis*, 577 F.2d at 340. "[I]nfringement of one's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public in any official or intentional manner, other than in connection with the defense of related legal action." *Id.* at 1088 (internal quotation marks and citations omitted); *see, e.g., Dennis*, 577 F.2d at 339, 341 (plaintiff "had been deprived of liberty without due process when members of the school board, in explaining why his teaching contract had not been renewed, publicly charged that he had a drinking problem"). Plaintiff has failed to allege how Defendants made public any charges against her. "[T]he mere presence of derogatory information in confidential files does not infringe an individual's liberty interest." *Id.* at 1087–108 (citing *Sims v. Fox*, 505 F.2d 857, 864 (5th Cir. 1974) (en banc), *cert. denied*, 421 U.S. 1011, 95 S. Ct. 2415, 44 L. Ed. 2d 678 (1975)). Thus, Plaintiff has failed to allege a constitutionally protected liberty interest to sustain her Fourteenth Amendment claims.

Because Plaintiff has not alleged a cognizable constitutionally protected property interest or liberty interest under the Fourteenth Amendment, her Section 1983 Fourteenth Amendment claims shall be dismissed.

Although the Court finds Plaintiff has failed to allege a viable property interest or liberty interest warranting Fourteenth Amendment protection, even assuming *arguendo* that she had, Plaintiff received all the process she was due. It is undisputed that Plaintiff utilized her right to a non-renewal hearing under the Education Employment Procedures Law, Mississippi Code § 37-9-111. The pleadings also indicate that Plaintiff served Defendant McPhail with a subpoena, *see* Non-Renewal Hr'g Tr. [1-3] at 142; counsel for LCSD took the position that McPhail would not testify, *see id.* at 142–47; and nothing in the pleadings indicate Plaintiff attempted to enforce the subpoena through the chancery court as provided in Mississippi Code § 37-9-111, which was discussed on the record at the hearing, *see id.* at 146–47. The Due Process Clause of the Fourteenth Amendment requires nothing more of the Defendants than they did in this case. Thus, Plaintiff's Fourteenth Amendment due process claims asserted under Section 1983 shall be dismissed.

Because Plaintiff has failed to plead constitutional violations upon which she could plausibly recover under Section 1983, Plaintiff's Section 1983 claims shall be dismissed in their entirety.

### 7. Section 1985 Conspiracy Claims Against All Defendants

Defendants next challenge the viability of Plaintiff's conspiracy claims under Section 1985. Plaintiff alleges under Section 1985 that "Defendants conspired to deter, by force, intimidation[,] and/or threat, Plaintiff from exercising her established First Amendment rights and her rights to Equal Protection." Pl.'s Compl. [1] ¶ 5. Because the Court has already found that Plaintiff has

failed to allege a First Amendment constitutional violation, she cannot assert a Section 1985 conspiracy claim on that basis. As for her Equal Protection allegations, the Court finds that Plaintiff's purported equal-protection claim "amounts to no more than a restatement of [her F]irst [A]mendment claim." *See Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 468 (5th Cir. 1990). Even if Plaintiff has attempted to assert a separate equal protection claim, her complaint is bereft of allegations supporting such a claim. Accordingly, the Court finds that Plaintiff's Section 1985 conspiracy claims shall be dismissed in their entirety.

## 8. State Law Claims Against All Defendants

Finally, Plaintiff asserts two supplemental state law claims for (1) wrongful termination in violation of public policy, i.e., the public policy exception to the at-will employment doctrine under *McArn*; and (2) malicious interference with employment. Defendants contend that both claims should be dismissed because Plaintiff failed to comply with the notice requirement in the Mississippi Tort Claims Act (the "MTCA") to assert these tort claims against Defendants; Defendants are immune from suit on these claims under the discretionary function exemption to the MTCA; and because Plaintiff was under an employment contract, she was not an at-will employee and thus fails to meet one of the required elements to sustain her *McArn* wrongful termination claim.

Plaintiff does not dispute that she failed to comply with the notice requirements of the MTCA prior to filing this action, but argues that both of her state law claims fall outside the purview of the MTCA and thus that Defendants are not protected from suit on these claims under the MTCA.[2] The Court will first address the *McArn* wrongful termination claim and will then address the malicious interference with employment claim.

---

[2] The Court notes that Plaintiff states in her response that she has alleged her state law claims against "Defendants McPhail and Nelson"; however, out of an abundance of caution and considering her allegations in the

26

*McArn* Wrongful Termination Claim

Plaintiff asserts a tort claim that Defendants wrongfully terminated her based on the public policy exception to the employment at-will doctrine under Mississippi law. For a plaintiff to maintain a tort action against a government entity, he or she must provide the statutorily required notice:

> [A]ny person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

MISS. CODE ANN. § 11-46-1(1). The notice-of-claim requirement, which is jurisdictional, "imposes a condition precedent to the right to maintain an action." *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 665 (Miss. 1999) (quoting *Carr v. Town of Shubuta*, 733 So. 2d 261, 265 (Miss. 1999) (internal quotation marks omitted)). The Mississippi Supreme Court has held that "the ninety-day notice requirement under [S]ection 11 -46-11(1) is a hard-edged, mandatory rule which the Court strictly enforces." *See Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006).

The law is clear that *McArn* wrongful termination claims are governed by the MTCA, and thus, notice pursuant to the MTCA is required to sustain such a claim. *See Lamb v. Booneville Sch. Dist.*, No. 1:08CV254-SA-JAD, 2009 WL 843116, at *1 (N.D. Miss. Mar. 26, 2009); *Taylor v. City of Jackson*, No. 3:07-cv-76-WHB-JCS, 2007 WL 2122470, at *4 (S.D. Miss. July 20, 2007); *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 916 (¶¶ 16–17) (Miss. 2011); *Davis v. Biloxi Pub. Sch. Dist.*, 110 So. 3d 321, 326 (¶ 17) (Miss. Ct. App. 2011). Although the MTCA does not apply to "pure contract actions," it does apply to claims for tortious breach of contract: "The clear

complaint are pled to pertain to all Defendants, the Court will analyze both state law claims with respect to all Defendants.

27

intent of the [L]egislature in enacting [the MTCA] was to immunize the State and its political subdivisions from any tortious conduct, including tortious breach of . . . contract." *City of Grenada v. Whitten Aviation, Inc.*, 755 So. 2d 1208, 1213 (Miss. Ct. App. 1999). Because Plaintiff offers no proof that she complied with the statutorily required notice for her *McArn* wrongful termination claim and does not challenge Defendants' contention that she did not comply with the statutorily required notice, her wrongful termination claim fails against LCSD and Defendants McPhail and Nelson in their official capacities. To the extent her *McArn* claim is asserted against Defendants McPhail and Nelson, those claims similarly fail because liability under *McArn* is limited to the employer and does not extend to individual defendants. *See DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 358 (Miss. 2008).

Defendants further maintain that Plaintiff's *McArn* claim fails on another ground: the *McArn* doctrine only applies in the absence of an employment contract and thus does not apply to the Plaintiff, who was working under contract at the time of the alleged incidents. The Court finds that this argument is not well taken. The Fifth Circuit has explained that *McArn* applies "[r]egardless of whether a written contract governs an employment relationship." *Kyle v. Circus Circus Miss., Inc.*, 430 F. App'x 247, 250 (5th Cir. 2011) (per curiam). Indeed, the Mississippi Supreme Court stated in *McArn*:

> We are of the opinion that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine and **this should be so whether there is a written contract or not**: (1) an employee who refuses to participate in an illegal act as in Laws shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

28

*McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993) (emphasis added). Thus, the Court finds that the *McArn* wrongful termination claim is not subject to dismissal on this additional basis. Because the Court finds that based on Defendants' arguments the *McArn* claim is properly dismissed only for failure to comply with the MTCA's statutory notice requirements, which is a jurisdictional basis, the Court shall dismiss Plaintiff's *McArn* claim against LCSD and Defendants McPhail and Nelson in their official capacities without prejudice. The Court shall dismiss Plaintiff's *McArn* claim against the individual-capacity Defendants with prejudice, as the same cannot be stated against the individual-capacity Defendants as a matter of law.

Malicious Interference with Employment Claim

Plaintiff argues that her malicious interference with employment claim survives Defendants' motion to dismiss, because the MTCA does not apply to Plaintiff's malicious interference claim. Plaintiff maintains that such a claim does not fall within the MTCA; Plaintiff further argues that her allegations that Defendants' McPhail and Nelson acted out of malice (Plaintiff specifically points to her allegations that Defendants McPhail and Nelson met with Plaintiff to prevent her from voicing her concerns at a school board meeting and that Defendant McPhail instructed male coaches not to state their real stipends and threatened employees with termination if they assisted in any investigation of LCSD) support that Defendants' alleged acts were not within the course and scope of Defendants McPhail and Nelson's employment duties and thus that these Defendants are subject to suit on this claim in their individual capacities, as well. Defendants argue that Plaintiff's allegations of malicious interference fall within the purview of the MTCA and thus that this claim fails for Plaintiff's failure to comply with the MTCA's required notice provision. Defendants further argue that the allegations fail to support that Defendants McPhail and Nelson in their individual capacities acted maliciously outside the course and scope

29

of their employment and thus that this claim must be dismissed against the individual-capacity Defendants.

The law is clear that a malicious interference with employment claim is not governed by the MTCA. *See King v. Bd. of Trustees of State Insts. of Higher Learning of Miss.*, No. 3:11–CV–403–CWR–FKB, 2012 WL 2870789, at *4 (S.D. Miss. July 12, 2012); *Stephen v. Winston County, Miss.*, No. 1:07CV118-SA-JAD, 2008 WL 4813829, at *10 (N.D. Miss. Nov. 4, 2008); *Gibson v. Estes*, No. 2:05CV 170, 2007 WL 1459307, at *1 (N.D. Miss. May 16, 2007). The law is also clear that when a plaintiff alleges a state employee acted with malice, the plaintiff is alleging that the state employee acted outside the scope of his employment, and the state employee is therefore subject to personal liability. *See* MISS. CODE ANN. § 11-46-5(2) ("For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice . . . .); *see also Kirk v. Crump*, 886 So. 2d 741, 747 (¶¶ 28–29) (Miss. 2004). Thus, LCSD and Defendants McPhail and Nelson, in their individual and official capacities, are not subject to the MTCA's protections on Plaintiff's malicious interference claim. Accordingly, Plaintiff's malicious interference with employment claim against all Defendants survives Defendants' motion to dismiss.

### *D. Conclusion*

In sum, the Court finds that Defendants' Rule 12(b)(6) motion to dismiss [9] shall be **GRANTED IN PART AND DENIED IN PART**, as follows:

The following claims shall be **dismissed with prejudice: (1)** the Title IX discrimination and retaliation claims against Defendants McPhail and Nelson; **(2)** the Title VII gender discrimination and retaliation claims against Defendants McPhail and Nelson; **(3)** the ADEA age

discrimination claim against Defendants McPhail and Nelson; **(4)** all claims under 42 U.S.C. § 1983 against all Defendants; **(5)** all conspiracy claims under 42 U.S.C. § 1985 against all Defendants; and **(6)** the state law *McArn* wrongful termination claim, insofar as it is asserted against Defendants McPhail and Nelson in their individual capacities.

The following claim shall be **dismissed without prejudice**: **(1)** the state law *McArn* wrongful termination claim, insofar as it is asserted against Defendant Lafayette County School District, as well as Defendants McPhail and Nelson in their official capacities.

The following claims **survive the motion to dismiss**: **(1)** the Title IX discrimination and retaliation claims against Defendant Lafayette County School District; **(2)** the Title VII gender discrimination and retaliation claims against Defendant Lafayette County School District; **(4)** the ADEA age discrimination claim against Lafayette County School District; and **(5)** the state law malicious interference claim against all Defendants.

The Court further finds that the motion for qualified immunity [13] filed by Defendants McPhail and Nelson is **DENIED AS MOOT**.

A separate order shall issue in accordance herewith.

THIS, the 16 day of September, 2013.

_____
SENIOR JUDGE